UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LESHAUN BENJAMIN,

                Plaintiff,

v.                                               Case No. 22-cv-191-pp

SERGEANT EWERT,
SERGEANT DEMERS,
and CAPTAIN TRITT,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND ORDERING PLAINTIFF TO FILE AMENDED COMPLAINT**

---

       Leshaun Benjamin, who at the time he filed his complaint was incarcerated at Waupun Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants mishandled his mail. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds

exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 1, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $33.03. Dkt. No. 6. The court received that fee on March 15, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

   A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint alleges that around March 9, 2021, the plaintiff was writing a letter to Governor Tony Evers that he planned to send via certified mail. Dkt. No. 1 at 2. The plaintiff says he "notice[d] that a couple of Government agen[]cies" had not received his previous letters; he says "(Internal Affairs) verified on a phone call 3-way." Id. Around March 25, 2021, the plaintiff received opened legal mail sent from "Eastern District of Wis. Courts"

even though the letter "clearly s[t]ated in bold letter[s] 'Open in presant of Inmate Confidential Mail [*sic*].'" Id. Correctional Officer Miller (who is not a defendant) delivered this letter to the plaintiff while wearing his body camera, which the plaintiff says was on at the time. Id. The plaintiff alleges that about three weeks earlier, Sergeant Demers was passing out legal mail; he says that as Demers was opening the plaintiff's legal mail in front of him, Demers "asked [the plaintiff] was [Demers's] name in it while briefly scanning it while passing [the plaintiff his] mail." Id. at 2-3.

The plaintiff alleges that he has "been charged for the service of Certified Mail several times but [has] noticed that [he has] not rec[ei]ved a[] U.S. Postal Service Certified Mail Receipt." Id. at 3. The plaintiff asserts that this is how he "learned that [he is] being retaliated ag[a]inst for previously exercising [his] Constitutional rights." Id. The plaintiff "[t]his is a direct violation of [his] First Amendment when dealing with privileged mail ect.," and that it is an act of "crule [*sic*] and unusual punishment." Id.

The plaintiff says that he has "won the Inmate Complaint Examiner Favor in regards to this continuous misconduct of Public Office, which were affirmed due to the seriousness of this issue (Mail Box Rule violation)." Id. The plaintiff says that this "is clearly normal behavior," because he has experienced similar problems "at leas[t] seven time[s]" since his arrival at Waupun and is "now suing for the torture [he's] endured." Id. He also asserts, without elaboration, that he is suing for "due process violations." Id.

The plaintiff attached to his complaint copies of the complaint examiner's recommendations from two of his grievances. Dkt. No. 1-1 at 1–2. The first recommendation is from the plaintiff's March 25, 2021 complaint about an envelope from his legal mail that was opened outside of his presence. Id. at 1. The complaint examiner notes that the envelope and the hard copy of the plaintiff's complaint submission "have been lost." Id. The complaint examiner nonetheless recommends affirming "that the envelope may have been mistakenly opened." Id. The complaint examiner notes that the plaintiff "does not state he was harmed in any way or that any documents were missing." Id.

The second recommendation is from the plaintiff's March 15, 2021 complaint that his mail was not sent as certified even though he requested it. Id. at 2. The complaint examiner's notes say that Sergeant Ewert reviewed the plaintiff's document, which was marked to be sent as certified mail, "but [Ewert] must have missed it and it was sent out but not certified." Id. The complaint examiner recommends "to affirm that a mistake was made and the mail was sent out but not certified as requested." Id. She notes that there "is absolutely no evidence of 'misconduct in office' as the inmate states[,] just a simple mistake." Id. The complaint examiner again notes that the plaintiff "does not state he was harmed in any way by this mistake." Id.

The plaintiff also attached his health services request from November 14, 2021, asking to be "referred to see a[] specialist" for his complaints of "stomach pains, chest pains, and headach[e]s." Id. at 3. He says he "need[s] to be

screened for Tumorus [*sic*] cancers" and that his "lungs even hurts [him] to breath." Id.

The plaintiff seeks $60,000 in "emotional damages, compensatory damages, [and] punitive damages" for the "stress and headach[e]s" he says he suffered from the defendants' actions. Dkt. No. 1 at 4. He also asks that "these staff involved [be] fired so that other staff training under them will respect the law and not bias prison officials who is [*sic*] fearless of federal laws." Id.

C. Analysis

The plaintiff's allegations about his opened legal mail could state a claim under the First Amendment. Incarcerated persons retain a First Amendment right to send and receive mail. Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005) (citing Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999)). An incarcerated person's legal mail "is entitled to greater protections because of the potential for interference with his right of access to the courts." Kaufman, 419 F.3d at 685–86 (citing Rowe, 196 F.3d at 782). "Legal mail," however, does not encompass everything an incarcerated person receives related to a lawsuit. Officials may violate an incarcerated person's rights if they open a letter "marked with an attorney's name and a warning that the letter is legal mail." Id. at 686 (citing Wolff v. McDonnell, 418 U.S. 539, 577 (1974); and Castillo v. Cook Cty. Mail Room Dep't, 990 F.2d 304, 305–06 (7th Cir. 1993)). Court orders, on the other hand, are not entitled to special privilege because they are public documents. See Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987). Nor is correspondence

6

Case 2:22-cv-00191-PP   Filed 10/18/22   Page 6 of 16   Document 7

from state or federal agencies considered "legal mail." Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010). And the fact that a prison official unjustifiably opens an incarcerated person's mail from his lawyer is actionable only if the plaintiff can show "hindrance" in pursuing a legal claim. Guajardo-Palma, 622 F.3d at 805 (citations omitted). Prison officials may read or examine an incarcerated person's mail to ensure that it does not contain contraband without violating the First Amendment. Kaufman, 419 F.3d at 685 (citing Wolff, 418 U.S. at 576, and Rowe, 196 F.3d at 782).

With these legal principles in mind, the court concludes that the complaint does not state a First Amendment violation regarding the plaintiff's opened mail. The plaintiff says he received an opened letter sent from this court. He does not say who opened the letter or allege that anything was missing from the envelope. Even if the plaintiff knew who opened his mail, he does not explain what was in the envelope. If it was a court orders, that order was not entitled to the same protections as mail the plaintiff might receive from his attorney. If it was a letter from the clerk's office, it was not privileged. The fact that a single, non-privileged letter was opened outside of his presence *may have* violated a prison policy or rule, but it did not violate his First Amendment rights. See Richards v. Gutho, No. 16-CV-1453-PP, 2018 WL 705307, at *3 (E.D. Wis. Feb. 2, 2018) (granting judgment as a matter of law for prison official who opened and read single piece of non-privileged mail to perform "spot check" for security issues). Because §1983 protects only against constitutional violations and does not protect against violations of prison rules or policies,

Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017), the plaintiff's allegations about a single piece of opened mail fail to state a claim.

The plaintiff alleges that he is "being retaliated against" for exercising his rights. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." Felton v. Huibregtse, 525 F. App'x 484, 486 (7th Cir. 2013) (citing Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); and Bridges, 557 F.3d at 546). The court understands the plaintiff to allege that he faced retaliation for filing complaints or lawsuits in the past. That is protected activity for the purpose of a First Amendment claim. See Pearson v. Welborn, 471 F.3d 732, 741 (7th Cir. 2006) (complaints); Harris v. Walls, 604 F. App'x 518, 521 (7th Cir. 2015) (lawsuits).

But the plaintiff's allegations do not satisfy the other elements of a retaliation claim. Regarding the deprivation the plaintiff says he suffered, the court must determine "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity.'" Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (quoting Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011)). This is an objective test that does not consider the plaintiff's persistence or specific circumstances. Id. (citing Holleman v. Zatecky, 951 F.3d 873, 880 (7th Cir. 2020)). The plaintiff alleges that some government agencies have not received his previous letters

and that some of his other mail was sent as regular mail instead of as certified mail. He does not allege whose actions, if any, caused his earlier letters not to reach their intended recipients. Sergeant Ewert explained that he accidentally missed the plaintiff's request that a letter be sent certified and sent it via regular mail instead. Dkt. No. 1-1 at 2. An incarcerated person of ordinary firmness would not cease filing complaints or lawsuits because some of his letters did not reach their recipients or because a single piece of his mail was sent by regular instead of certified mail. Perhaps the incarcerated person would stop requesting certified mail and would settle with sending letters via regular mail. Or perhaps he would continue sending letters by certified mail but insist that prison staff carefully read his instructions and follow his request. Either way, the alleged "deprivation" is insufficient to satisfy this element of a claim of retaliation.

Nor does the plaintiff allege that his mail was mishandled because of his previous activity. To prove this third element, the plaintiff must show more than that the defendants' actions occurred after his protected activity. He must show that the defendants *knew* about his protected conduct and *acted because of it*. See Healy v. City of Chi., 450 F.3d 732, 740–41 (7th Cir. 2006). In other words, the plaintiff must show that the protected activity "was the but-for cause" of the adverse action. Winston v. Fuchs, 837 F. App'x 402, 404 (7th Cir. 2020) (citing Nieves v. Bartlett, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019) (explaining that the official's retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been

taken absent the retaliatory motive")). The plaintiff does not say who he believes retaliated against him for his earlier complaints or lawsuits. The court can infer that the plaintiff believes Ewert retaliated against him because he is the prison official who accidentally sent the plaintiff's mail by regular mail. Even with this inference, the plaintiff does not allege that Ewert was aware of the plaintiff's previous complaints or lawsuits and mis-sent his mail because of that previous activity. The plaintiff also says that when Demers opened mail in front of him, Demers asked if Demers' name was in the mail. The plaintiff does not allege that he previously had filed lawsuits or complaints against Demers. He does not allege that if he did file such lawsuits or complaints, Demers knew about them. He has not alleged that *any* prison official knew about any previous complaints or lawsuits and, because of those filings, mishandled his mail or opened his mail outside his presence. The plaintiff's speculation that prison officials retaliated against him is not enough to satisfy this third element. The complaint fails to state a claim of retaliation.

The complaint asserts, without elaboration, that the plaintiff seeks to sue for "Due Process violations." Dkt. No. 1 at 3. It is possible that the plaintiff is attempting to assert a claim that repeated mishandling of his mail denied him access to the courts. This claim could be actionable under the Fourteenth Amendment. See Williams v. Lane, 851 F.2d 867, 878 (7th Cir. 1988) (citing Bounds v. Smith, 430 U.S. 817, 824 (1977)). To succeed on this claim, the plaintiff must describe "the underlying cause of action and its lost remedy." Christopher v. Harbury, 536 U.S. 403, 415–16 (2002). He also must show that

"the defendants' conduct prejudice[d] a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006).

The complaint suggests that the plaintiff's opened mail was correspondence from this court and says that the mail that he meant to have sent certified was directed to State agencies. But the plaintiff does not allege whether these letters involved an ongoing challenge to his conviction, sentence or conditions of his confinement. He does not allege that the opening of his mail *hindered* a meritorious challenge. That mail was opened outside his presence (or not properly delivered) does not violate his rights if it was not relevant to an ongoing, meritorious legal case or claim. See Lewis v. Cook Cty. Bd. of Comm'rs, 6 F. App'x 428, 430 (7th Cir. 2001) (concluding that prisoner's allegations that legal mail repeatedly was opened outside his presence did not state an access-to-courts claim because he failed to describe a "legal case or claim that was in any way thwarted because the mail room staff opened his legal mail"). Because the complaint does not allege that any the plaintiff's mishandled mail involved an ongoing, meritorious legal challenge, it does not state an access-to-courts claim.

The complaint does not state any other claim against Ewert. The complaint does not even contain allegations against Ewert. The only mention of Ewert is in the complaint examiner's recommendation on the plaintiff's March 15, 2021 complaint. Ewert told the complaint examiner that he must have missed the plaintiff's request to send his mail certified and accidentally sent it

out as regular mail. Dkt. No. 1-1 at 2. The complaint does not allege that Ewert's actions were anything but a mistake or accident. An accident or mistake is not cruel and unusual punishment and does not constitute a violation of the plaintiff's rights. See Farmer v. Brennan, 511 U.S. 825, 840 (1994) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)).

The only allegation against Sergeant Demers is that he opened a single piece of the plaintiff's mail in front of the plaintiff and, in the process, asked the plaintiff if Demers' name was in it. The complaint does not allege that the mail Demers opened was protected, legal mail. Even if it were, and even if the Constitution required it be opened in the plaintiff's presence, Demers *complied* with that requirement and opened his mail in front of him. These allegations do not state a First Amendment claim.

The complaint also names Captain Tritt, but alleges nothing against Tritt, nor do the attachments mention Tritt. Section 1983 holds liable only defendants who are personally involved in an alleged deprivation. Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996). Because the complaint does not allege whether or how Tritt is involved with the plaintiff's claims, it fails to state a claim against him. See Twombly, 550 U.S. at 570 (holding that a complaint that fails to allege any action by a defendant necessarily fails to "state a claim for relief that is plausible on its face").

To the extent the plaintiff seeks to proceed against correctional officer Miller, he does not state a claim. The plaintiff says only that Miller delivered an already opened piece of mail from this court to the plaintiff. He does not allege

that Miller is the officer who opened the mail outside the plaintiff's presence. Delivering already open, non-privileged mail to a prisoner does not violate that prisoner's rights. Whoever did open the mail did not violate the plaintiff's constitutional rights because the opened envelope contained either a letter from or order of the court, not a communication with the plaintiff's attorney.

The court concludes that the complaint fails to state a claim for relief. Courts generally must permit civil plaintiffs at least one opportunity to amend their pleadings but need not do so where the amendment would be futile. See O'Boyle v. Real Time Resolutions, Inc., 910 F.3d 338, 346–47 (7th Cir. 2018); Boyd v. Bellin, 835 F. App'x 886, 889 (7th Cir. 2021). The plaintiff's complaint is thorough in its allegations of facts surrounding his claims. The court finds that additional facts would not save the plaintiff's claims regarding his opened mail or his claim that mail was not sent as certified mail. The plaintiff may not amend those claims and may not proceed on them. It is possible, however, that with additional information, the plaintiff could state an access-to-courts claim. The court will give the plaintiff an opportunity to amend his complaint to proceed on *that claim only*. He may not proceed on any other claim, whether he included it in his original complaint or not.

When writing his amended complaint, the plaintiff must provide the court with enough facts to answer the following questions: 1) Who violated his right of access to the courts?; 2) What did each person do to violate his right of access to the courts?; 3) Where did each person violate his right of access to the courts?; and 4) When did each person violate his right of access to the

courts? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claim.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an

14

Case 2:22-cv-00191-PP   Filed 10/18/22   Page 14 of 16   Document 7

amended complaint, he must do so in time for the court to *receive* it by the end of the day on **November 25, 2022**. If the plaintiff files an amended complaint by the end of the day on November 25, 2022, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the November 25, 2022 deadline, or if the amended complaint seeks to proceed on any claim other than the plaintiff's access-to-courts claim, the court will dismiss the case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The plaintiff has been released from custody. The court **ORDERS** that the plaintiff must pay the **$316.97** balance of the filing fee as he is able.

The plaintiff must send the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court reminds the plaintiff that if he moves, or is reincarcerated, it is his responsibility to notify the court of that

fact in each of his cases. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 18th day of October, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**